USDC SCAN INDEX SHEET

















CAG   2/27/04   12:28

3:03-CV-02193   FORSBERG V. FIDELITY NATIONAL

*12*

*O.*

FILED

04 FEB 26 PM 1:09

CLERK U.S DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY _____ DEPUTY

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GRANT R. FORSBERG,<br><br>                                    Plaintiff,<br>          vs.<br><br>FIDELITY NATIONAL CREDIT<br>SERVICES, LTD.,<br><br>                                    Defendant. | CASE NO. 03cv2193-DMS(AJB)<br><br>**ORDER DENYING<br>DEFENDANT'S MOTION TO<br>DISMISS FIRST AMENDED<br>COMPLAINT**<br><br>[Doc. Nos. 5 & 7.] |

## I.

## INTRODUCTION

The Court now considers a motion by Defendant Fidelity National Credit Services, LTD ("Fidelity") to dismiss Plaintiff Grant R. Forsberg's ("Forsberg") First Amended Complaint ("FAC"), filed on December 9, 2003. Defendant Fidelity filed this motion on December 23, 2003. Plaintiff Forsberg opposed the motion on January 22, 2004. Defendant did not file a Reply. The Court decides this motion on the papers submitted and without oral argument, pursuant to Local Civ. R. 7.1(d)(1). The Motion is DENIED for the reasons discussed below.

///

///

///

## II.

## FACTUAL AND PROCEDURAL SUMMARY

This case concerns five letters sent by Defendant to Plaintiff, in an attempt to collect a $233.57 debt. Some time before February 19, 2003, Plaintiff Forsberg incurred financial obligations from AT&T Corporation ("AT&T"). (FAC ¶ 13.) AT&T apparently assigned the debt to Defendant Fidelity, a collection company. (FAC ex. 1.) On February 21, 2003, Defendant sent Plaintiff a letter indicating the debt had been assigned for collection. (Id.)

On April 21, 2003, Defendant sent Plaintiff a second letter. This letter informed Plaintiff Defendant had already sent *two* other letters, and Defendant had made "numerous other telephonic communications" with Plaintiff in an attempt to resolve the debt. (FAC ex 2.) Plaintiff claims both these statements are false. (Opp'n at 2.)

On May 16, 2003, Defendant sent Plaintiff a third letter. (FAC ¶ 28.) This letter offered Plaintiff a $156.49 settlement on the $233.57 total due. (FAC ex. 5.)

Plaintiff filed for bankruptcy in May of 2000. On May 15, 2000, AT&T (the original creditor) was served with notice of the filing, which advised AT&T any further attempts at collection were prohibited. (FAC ¶ 26.) On August 20, 2003, the United States Bankruptcy Court for the Southern District of California discharged Plaintiff's debts, including the $233.57 owed to AT&T. (Comp. ¶ 27.)

During the pendency of the bankruptcy, Plaintiff received a fourth letter from Defendant on June 13, 2003. Plaintiff also received a fifth letter on October 27, 2003. (FAC ¶¶ 29–30.)

Plaintiff's Complaint alleges these five letters violated both the Federal Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq.; and California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"), Cal. Civ. Code §§ 1788–1788.32. Defendant now argues these claims should be dismissed for failing to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6).

///

///

///

03cv2193

# III.

## JURISDICTION

Plaintiff brings his claim under the FDCPA, 15 U.S.C. § 1692 et seq.  Therefore, this Court has jurisdiction based on a federal question, 28 U.S.C. § 1331.  The Court exercises supplemental jurisdiction over Plaintiff's related state law claim.  28 U.S.C. § 1367.

# IV.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a party's claims. The Rule provides for the dismissal of a claim "if as a matter of law it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Parks Sch. of Business, Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995).  Rule 12(b)(6)'s purpose is "to allow the court to eliminate actions that are fatally flawed in their legal premises and destined to fail, and thus spare litigants the burdens of unnecessary pretrial and trial activity." Advanced Cardiovascular Sys, Inc. v. Scimed Life Sys., Inc., 988 F.2d 1157, 1160 (Fed. Cir. 1993).

A motion to dismiss brought pursuant to Rule 12(b)(6) is "treated as one for summary judgment and disposed of as provided in Rule 56." Fed. R. Civ. P. 12(b).  Thus, matters outside the pleadings may be considered. Id.  In ruling on a motion to dismiss, the Court must construe the complaint in the light most favorable to the plaintiff and accept as true all factual allegations. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  However, courts do not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." Western Mining Council v. Watt, 643 F.2d 618, 624 (9th Cir. 1981).

# V.

## DISCUSSION

Defendant moves to dismiss this action for failing to state a claim. Defendant argues: (1) Defendant provided proper notice of Plaintiff's validation rights; (2) Defendant's

- 3 -

1  subsequent communication was not false, deceptive, or misleading within the meaning of the

2  FDCPA; and (3) Defendant's communications following Plaintiff's bankruptcy filing did not

3  violate the FDCPA absent Defendant's knowledge of Bankruptcy.  (Mot P&A, at 4, 6, & 8.)

4  Plaintiff opposes the motion and argues: Defendant's notice of Plaintiff's validation rights fell

5  short of statutory requirements; Defendant did make false statements in their communications

6  with Plaintiff; and Defendant's absence of knowledge regarding Plaintiff's bankruptcy filing

7  is irrelevant for the imposition of statutory liability.  (Opp'n at 5, 7, & 9.)

8

9  **A.    Notice of Plaintiff's Validation Rights**

10        The Complaint avers Defendant's first letter violated the FDCPA in not affording him

11  proper notice of his validation rights.  "Congress designed the Federal Act to 'eliminate the

12  recurring problem of debt collectors dunning the wrong person or attempting to collect debts

13  which the consumer has already paid.'"  Swanson v. So. Oregon Cred. Serv., Inc., 869 F.2d

14  1222, 1225 (9th Cir. 1988) (citations omitted); Robert J. Hobbs, Fair Debt Collection, § 5.7.1,

15  at 242–43 (4th ed., 2000) (verification of debt is "intended to minimize instances of mistaken

16  identity of a debtor or mistakes over the amount or existence of a debt.  It is an informal

17  method of dispute resolution that conserves tax dollars and judicial resources.").  The

18  "Validation of Debts" section of the FDCPA reads:

19        Within five days after the initial communication with a consumer in connection
          with the collection of any debt, a debt collector shall, *unless the following*
20        *information is contained in the initial communication* or the consumer has paid
          the debts, send the consumer a written notice containing—
21              (1)  the amount of the debt;
                (2)  the name of the creditor to whom the debt is owed;
22              (3)  a statement that unless the consumer, within thirty days after receipt
          of the notice, disputes the validity of the debt or any portion thereof, the debt
23        will be assumed to be valid any the debt collector;
                (4)  a statement that if the consumer notifies the debt collector in writing
24        within the thirty-day period that the debt, or any portion thereof, is disputed; the
          debt collector will obtain verification of the debt or a copy of a judgment against
25        the consumer and a copy of such verification or judgment will be mailed to the
          consumer by the debt collector; and
26              (5)  a statement that, upon the consumer's written request within the
          thirty-day period, the debt collector will provide the consumer with the name
27        and address of the original creditor, if different from the current creditor.

28  15 U.S.C. § 1692g(a) (emphasis added).

- 4 -

1    Whether such notice is sufficient under the statute is to be interpreted from the objective

2  perspective of the "least sophisticated debtor." See, e.g., Baker v. G.C. Servs. Corp., 677 F.

3  2d 775, 778 (9th Cir. 1982); Clomon v. Jackson, 988 F.2d 1314, 1318–19 (2nd Cir. 1993) ("least

4  sophisticated debtor" test "protects all consumers, the gullible as well as the shrewd" and

5  "protects debt collectors from unreasonable misinterpretations of collection notices"). Because

6  the parties agree Plaintiff received no further communications from Defendant within five days

7  of the February 1, 2003 letter (the "initial communication"), this letter must contain all of the

8  requisite information quoted above. Defendant argues the letter satisfies these requirements.

9  (Mot P&A at 4–6.)

10    Plaintiff concedes the letter satisfies the requirements of subsections (1) and (2), as both

11  the amount of the debt and the name of the creditor to whom the debt was owed were included

12  in the letter. (Opp'n at 5 & n. 30.) Plaintiff, however, argues the letter falls short of meeting

13  the requirements laid out in the remaining three subsections. Specifically, Plaintiff complains:

14  Defendant has failed to furnish a statement that the debt would be assumed valid absent the

15  consumer's dispute of the debt within thirty days after the receipt of the notice; that the debt

16  collector will verify the debt if the consumer disputes the debt or any portion thereof within

17  thirty days after receipt of the notice; and that the collector will provide the name and address

18  of the original creditor if requested by the consumer within the thirty-day time period. (Opp'n

19  at 5–7.)

20    The February 1, 2003 letter, in addition to indicating the name of the creditor and the

21  amount owed, indicates, in capital letters:[1] "Note: We do report all delinquencies to the

22  national credit reporting agencies including Dun & Bradstreet." (FAC ex 1.) The letter also

23  states, again in capital letters: "Unless a written response is received by our office within 30

24  days regarding any dispute, this debt will be considered valid and enforceable. Please include

25  documentation." (Id.)

26  ///

27

28    [1] Because the majority of the letter is written in "all caps" typeface, there is no implication any particular part of the letter written in "all caps" would stand out above the rest.

- 5 -

03cv2193

1    Plaintiff claims this letter was deficient in at least seven ways.  First, the letter fails to

2  mention the consumer could dispute only a "portion" of the debt, as opposed to the entire

3  amount, as described by § 1692g(a)(3) & (4).  (Opp'n at 6.)  Second, the letter implies that if

4  Plaintiff did not dispute the debt within 30 days, it would be considered "valid *and*

5  *enforceable*." § 1392g(a)(3) only says "valid." (Opp'n at 6.)  Plaintiff argues omission of "or

6  any portion thereof" and the addition of "and enforceable" creates ambiguity in the mind of

7  unsophisticated consumers.  (Opp'n at 6.)  Plaintiff's contentions have merit.  See Baker v.

8  G.C. Servs. Corp., 677 F. 2d 775, 778 (9th Cir. 1982) (holding that a debt collection company

9  violated § 1692g by failing to inform debtor that he could dispute only a portion of the debt).

10  Cf. Exposition Press Inc v. F.T.C., 295 F.2d 869, 873 (2nd Cir. 1961) ("In evaluating the

11  tendency of the language to deceive, the Commission should look not to the most sophisticated

12  readers but the least.") (citations omitted).

13    Third, Defendant's notice states any attempt to dispute the debt must be written.

14  Plaintiff insists § 1392g imposes no such requirement.  (Id.)  Section 1392g(b), however,

15  discusses the process that must occur when a consumer disputes a debt.  It begins: "If a

16  consumer notifies the debt collector *in writing* within the thirty-day period described [above]

17  that the debt, or any portion thereof, is disputed . . . ."  15 U.S.C. § 1692g(b) (emphasis

18  added).  The statute therefore specifically indicates the consumers' disputes are to be in

19  writing.  See Graziano v. Harrison, 950 F.2d 107, 11–12 (3rd Cir. 1991); Hobbs, supra, §

20  5.7.3.1, at 261.  Accordingly, this contention lacks merit.

21    Fourth, Plaintiff argues the language requirements of subsection (4) is completely

22  ignored in the letter.  (Id.)  The letter mentions nothing about the debt collector verifying the

23  debt and sending a copy of the verification to the consumer, as indicated in subsection (4).  A

24  debt collector violates the act if it fails to provide *any* information required in this act.  See

25  DeSantis v. Computer Credit, Inc., 269 F.3d 159, 161 (2nd Cir. 2001) (emphasis added).  Thus,

26  Plaintiff's argument has merit.

27    Fifth, Plaintiff contends the letter violates subsection (5) because it is devoid of any

28  language indicating the consumer could request in writing the name and address of the current

1  creditor. (Id.) However, where a debt collector expressly identifies the original creditor in the

2  debt validation notice, there is no need to offer to disclose the identity of the original creditor

3  as explained in subsection (5), as any such requirement would be redundant. See Cavallaro

4  v. Law Office of Shapiro & Kreisman, 933 F. Supp. 1148, 1154 (E.D.N.Y 1996); Hobbs,

5  supra, § 5.7.2.2.1, at 251. For this reason, Plaintiff's fifth contention is meritless.

6      Sixth, the letter tells Plaintiff, if he is disputing the debt, to "please include

7  documentation." (FAC ex. 1.) Documentation is not a requirement under the FDCPA, and

8  Plaintiff insists any intimation of a documentation requirement may have violated the Act. See

9  Sambor v. Omnia Credit Servs., Inc., 183 F. Supp. 2d 1234, 1239–40 (D. Haw. 2001) (holding

10 that a debt collector violated the FDCPA by confusing debtor into thinking she had to dispute

11 the alleged debt by providing supporting documentation) (citing Castro v. A.R.S. Nat'l Servs.,

12 Inc., 2000 WL 264310, at *3 (S.D.N.Y. March 8, 2000)). Accordingly, this contention is

13 meritorious.

14      Finally, Plaintiff alleges a violation of Cal. Civ. Code § 1785.26, regarding the following

15 statement made in the February 1, 2003 letter: "Note, we do report all delinquencies to the

16 national credit reporting agencies including Dun & Bradstreet." (FAC ¶¶ 22–25.) Section

17 1785.26(c)(2) requires a collection agency to notify a debtor in the following form: "As

18 required by law, you are hereby notified that a negative credit report reflecting on your credit

19 record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit

20 obligations." Any changes to the statutory notice requirement must make the notice *more*

21 specific, not less. See Cal Civ. Code § 1785.26(c)(3). Plaintiff claims because the actual notice

22 was less specific than that spelled out in the statute, the notice was misleading and deceptive

23 and thus violates Cal. Civ. Code § 1785.27(c)(2); 15 U.S.C. § 1692e(10) (use of false or

24 deceptive means to attempt to collect a debt); and 15 U.S.C. § 1692f (unfair practices). (Opp'n

25 at 8.)

26      Whether the notice given was "false, deceptive, or misleading" is a factual question,

27 which may not be determined in a motion to dismiss. See Taylor v. Perry, Landry, deLaunay

28 ///

1 & Durand, 103 F.3d 1232, 1236 (5th Cir. 1997).  This issue, therefore, is not appropriate for

2 resolution at this stage of the proceedings.

3 　　　For the foregoing reasons, Plaintiff raises sufficient facts to support his claim that the

4 February 1, 2003 letter sent by Defendant to Plaintiff, which served as the "initial

5 communication" under the FDCPA, did not comply with the statutory requirements for notice

6 of Validation of Debts as required by 15 U.S.C. § 1692g(a)(1)–(5) and Cal. Civ. Code §

7 1785.26.  See Hobbs, supra, § 5.7.2.2.1, at 250–52 ("The language of the validation notice

8 must be substantially the same as the statutory language and must not impose additional burdens

9 on the consumer.").  The motion to dismiss is therefore DENIED as to this issue.

10

11 **B.**    **False, Deceptive, or Misleading Communication**

12 　　　Plaintiff next complains Defendant's April 18, 2003 letter was in violation of the

13 FDCPA because it referenced "numerous telephonic communications" with Plaintiff, which

14 Plaintiff claims is a false statement.  (FAC ¶ 20.)  The FDCPA prohibits use of any "false,

15 deceptive, or misleading representation or means in the collection of any debt."  15 U.S.C. §

16 1692e.  As stated above, the Ninth Circuit determines whether a statement is false, deceptive,

17 or misleading by considering how a hypothetical "least sophisticated debtor" would view the

18 communication.  See Wade v. Regional Credit Ass'n, 87 F.3d 1098, 1100–01 (9th Cir. 1996)

19 (citation omitted).  For example, the Court will find a violation of § 1692e if a letter from the

20 collection agency would mislead a "least sophisticated debtor."

21 　　　Plaintiff claims the reference to "numerous telephonic conversations" in the April 18,

22 2003 letter was false: there were no telephonic communications prior to the letter.  Moreover,

23 the letter claimed to be the "3rd letter sent."  (FAC, ex. 2.)  The Court, in ruling on a motion to

24 dismiss, must accept as true all of Plaintiff's factual representations—it must assume there were

25 no telephonic conversations prior to April 18, 2003.  See Albright v. Oliver, 510 U.S. 266, 268

26 (1994).

27 　　　Defendant insists that even were the statements concerning numerous telephonic

28 communications and the third letter sent assumed untrue, such "statement[s] do[] not render the

1    communication to be a 'false'" statement in connection with collection of a debt as

2    contemplated by the FDCPA. (Mot. P&A at 7.) Conversely, Plaintiff argues the "least

3    sophisticated debtor" would be mislead by the statements into a false sense of urgency. (Opp'n

4    at 7.) The statements implied Plaintiff had been irresponsible in failing to resolve the debt after

5    so many communications. (Id. at 7–8.) As such, the statement were likely "false, deceptive,

6    or misleading" as contemplated by the FDCPA. See Hobbs, § 5.5.1.2, at 171–72 (even

7    "[l]iterally true statements, partial truths, and ambiguous statements are deceptive if the

8    statement is subject to an interpretation or contains an implication with the capacity to deceive.

9    Good faith is not a defense."). In any event, the determination of whether a statement or

10   statements were false, deceptive, or misleading under the FDCPA is a factual question, and

11   would be inappropriately resolved on a motion to dismiss. See Mitchell v. Surety Acceptance

12   Corp., 838 F. Supp. 497, 501 (D. Col. 1993).

13         In addition, Plaintiff asserts the April 18, 2003 letter—which informed Plaintiff his

14   collection had been reported to the major credit reporting agencies, including Dun &

15   Bradstreet—may have been false, deceptive, or misleading, if in fact Defendant never reported

16   the collection. (Opp'n at 8.) Plaintiff argues Defendant was merely "bluffing" in an attempt to

17   pressure and intimidate Plaintiff, a violation of §§ 1692e, 1692e(10), & 1692f.

18         As above, Plaintiff has alleged sufficient facts which, if true, support a cognizable legal

19   theory. The motion to dismiss is therefore DENIED as to this issue.

20

21   **C.     Communications After Bankruptcy Filing**

22         Finally, Plaintiff argues any communication by Defendant to Plaintiff in an attempt to

23   collect the debt, made after Plaintiff's May, 2003 bankruptcy filing, violated both the FDCPA

24   and the RFDCPA. (FAC at ¶¶ 28–31.) When a debtor files for bankruptcy, he receives "an

25   automatic stay of all collection efforts at the time of filing a petition for bankruptcy and a

26   similar injunction at the time of discharge of debts. . . . [The Bankruptcy Code] provides a

27   private right of action for anyone injured by a willful violation of the automatic stay . . . ."

28   Hobbs, supra, § 9.8, at 386–87 (citing 11 U.S.C. §§ 362(a)(6), 524(a)(2), & 362(h)).

1    Specifically, Plaintiff discusses Defendant's letters of May 16, 2003; June 13, 2003; and
2    October 27, 2003.  (Id.)  Plaintiff notified AT&T, the original creditor, of the petition for
3    bankruptcy on May 15, 2000, and the subsequent discharge some time later.  (FAC ¶ 26.)
4    Defendant insists these letters could not violate the FDCPA absent Defendant's affirmative
5    knowledge of the bankruptcy filing: AT&T's knowledge could not be imputed to Defendant.
6    (Mot P&A at 8.)

7    Plaintiff maintains the FDCPA is a strict liability statute, making Defendant's purported
8    lack of knowledge irrelevant for liability to attach.  (Opp'n at 9.)  Based on this Court's review
9    of the relevant authorities, while liability under the FDCPA may not be strict in all respects, it
10   is nonetheless generally a strict liability statute.  See Hobbs, supra, § 5.2.2, at 140–42.  It is
11   evident FDCPA liability may still attach when a debt collector is unaware of a debtor's
12   bankruptcy filing.  See Turner v. J.D.V.B. & Assoc., Inc., 330 F.3d 991, 996 (7th Cir. 2003)
13   (debt collector's lack of knowledge of bankruptcy not determinate; court must instead ask "how
14   a consumer would perceive the demand letter").  In Turner, the Court opined a "least
15   sophisticated debtor" could conclude from a reading of the demand letter the debt was still
16   owed, regardless of the discharge in bankruptcy proceedings.  Id.

17   Moreover, Plaintiff argues AT&T's knowledge was imputed to Defendant.  (Opp'n at
18   9.)  Plaintiff cites Alexander v. Unlimited Progress Corp., 2003 WL 1562234, at *8–9 (N.D.
19   Ill. March 24, 2003), to support this argument.  Alexander dealt with imputing to a collection
20   agency the original creditor's knowledge that the debtor was represented by counsel.  Id.  The
21   Court in Alexander found imputation necessary to give the debtor all the protections of her
22   choice to retain counsel.  Id.  The Court reasoned such imputation was essential to avoid a
23   creditor usurping a debtor's retention of counsel simply by assigning the debt to a collection
24   agency and failing to inform the agency of the debtor's counsel.  Id.

25   Defendant maintains the Ninth Circuit's decision in Walls v. Wells Fargo Bank, 276
26   F.3d 502 (9th Cir. 2002), precludes Plaintiff's claim.  In Walls, the Court held the United States
27   Bankruptcy Code precluded the debtor's claim under the FDCPA.  The Court interpreted
28   "Congress's intent to create a whole system under federal control [as not allowing] debtors to

1  bypass the Code's remedial scheme when it enacted the FDCPA." Id. at 510.  Nonetheless,

2  Walls is distinguishable from Plaintiff's case because the Plaintiffs in Walls brought a class

3  action suit against the original creditor who had been specifically enjoined by the Bankruptcy

4  Court from attempting to enforce the debt.  Id. at 505.  Here, Plaintiff has brought suit in his

5  individual capacity, and Defendant was not specifically enjoined by the Bankruptcy Court from

6  pursuing the debt.  (Opp'n at 10.)  Moreover, the Plaintiffs in Walls attempted to pursue

7  remedies under the Bankruptcy Code and the FDCPA *simultaneously*.  276 F.3d at 505.  Here,

8  Plaintiff sues only under the FDCPA and the RFDCPA.  (Opp'n at 10.)

9       At this stage of the proceedings, the Court need not rule on whether AT&T's knowledge

10  of the bankruptcy proceeding can be imputed to Defendant, or whether Defendant's

11  unawareness of the bankruptcy precludes FDCPA liability.  It is enough to say Plaintiff has

12  alleged sufficient facts to support a cognizable legal claim.  Defendant's motion is therefore

13  DENIED on this issue.

14

15                                    **VI.**

16                        **CONCLUSION AND ORDER**

17       For the reasons discussed above, Defendant's Motion to Dismiss the First Amended

18  Complaint is **DENIED** as to all the issues raised therein.

19       **IT IS SO ORDERED.**

20  Dated:    2-25-04

21                                         DANA M. SABRAW
                                           United States District Judge

22  cc:    Judge Battaglia
          All parties

23

24

25

26

27

28

                                    - 11 -                              03cv2193